IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


GLENN E. MIXON,
            Plaintiff,

vs.                                                              Case No. 5:09cv324/RH/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
            Defendant.
_____/

## REPORT AND RECOMMENDATION

        This case has been referred to the undersigned magistrate judge under the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D), and 72.3 of the Northern District of Florida pertaining to review of administrative determinations under the Social Security Act ("the Act") and related statutes, 42 U.S.C. § 401, *et seq.* It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83.

        Upon review of the record, the court concludes that certain findings of fact and determinations of the Commissioner are not supported by substantial evidence; thus, the court recommends that the decision of the Commissioner be reversed and remanded for further proceedings.

I.      PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits in August 2003 under Title II that was denied initially and on reconsideration (Tr. 31, 32).[1] An administrative law judge ("ALJ") rejected Plaintiff's application (Tr. 12–20), and the Appeals Council of the SSA denied Plaintiff's request for review (Tr. 4–7).  After Plaintiff filed a civil action in this court, the Commissioner moved to remand the case for further development of the record (Tr. 387–88), which motion the court granted. After holding a hearing on November 18, 2008, the ALJ issued a decision on January 16, 2009, in which he considered Plaintiff's DIB application filed in August 2003 and also his SSI application filed in August 2005 (Tr. 368–77).  In his decision, the ALJ found that Plaintiff had not been under a disability at any time between his alleged onset date of September 14, 2000, and the date of the decision (Tr. 377).  On July 24, 2009, the Appeals Council denied Plaintiff's request for review (Tr. 352–55).  Thus, the January 16, 2009, decision of the ALJ stands as the final decision of the Commissioner, now subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II.     FINDINGS OF THE ALJ

In his January 16, 2009, decision the ALJ made the following findings (Tr. 368–77):

1)      Plaintiff met the insured status requirements of the Act through March 31, 2010.

2)      Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Although Plaintiff had worked after that date, his work activity did not rise to the level of substantial gainful activity.

3)      Plaintiff had the severe impairments of degenerative disc disease and chronic obstructive pulmonary disease.  Plaintiff's headache disorder was non-severe as it could be treated effectively with rest and over-the-counter medications.

4)      Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the regulations.

---

[1] All references to "Tr." refer to the transcript of the SSA record filed April 14, 2010 (Doc. 14).  The page numbers cited herein are those found in the upper right-hand corner of each page of the transcript rather than the page numbers which were assigned by the court's electronic docketing system.

5)    Plaintiff had the residual functional capacity ("RFC") to perform light work, except that he could only occasionally climb, balance, stoop, kneel, crouch, and crawl. And he could not be exposed to pulmonary irritants such as dust, fumes, and gases.

6)    Plaintiff was able to perform his past relevant work as a car driver.

7)    Alternatively, there was other work that Plaintiff was able to perform. During the relevant period, Plaintiff—who was born February 2, 1956—was a younger individual, then moved into the category of an individual closely approaching advanced age. He had at least a high school education and was able to communicate in English. Under the Medical-Vocational Rules, which were used as a framework for decision making, Plaintiff was "not disabled"; thus transferability of job skills was not material to the determination of disability regardless whether Plaintiff possessed transferable job skills.

8)    In light of Plaintiff's age, education, work experience, and RFC, jobs existed in the national economy in significant numbers that Plaintiff could perform. A vocational expert ("VE") testified that these jobs included the positions of chauffeur, gate guard, ticket taker, and parking lot cashier.

9)    Plaintiff was not under a "disability," as defined in the Act, from September 14, 2000, through January 16, 2009, the date of the ALJ's decision.

## III.    STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. Tr.Tr. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but

not a preponderance, it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[2] the Commissioner analyzes a disability claim in five steps:

1.      If the claimant is performing substantial gainful activity, he is not disabled.

2.      If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3.      If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.      If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

---

[2]  In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. Separate, parallel statutes and regulations, however, exist for DIB and SSI claims (see 20 C.F.R. §§ 404, 416). Therefore, hereafter, citations in this report and recommendation should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

5.      Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his RFC and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  20 C.F.R. § 404.1512.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.    DISCUSSION

Plaintiff asserts numerous errors by the ALJ, including that at step two of the sequential analysis he erroneously found that Plaintiff's headaches were non-severe.[3]  In support of this argument, Plaintiff points to the records of Dr. Joseph, Plaintiff's pain management treating physician from November 2001 through December 2005.  According to Plaintiff, Dr. Joseph's records reflect that Plaintiff suffered persistent headaches which were relieved only temporarily, albeit significantly, by occipital nerve block injections (Doc. 22 at 19–20).  In his response, relying on certain records from Dr. Joseph, treating neurosurgeon Christopher S. Rumana, M.D., Dr. Lewandowski, and Dr. Jacob, the Commissioner argues that the ALJ correctly found at step two that Plaintiff's headaches were not a medically determinable severe impairment (Doc. 27 at 13–14).

At step two of the sequential analysis, the claimant must prove that he is suffering from a severe impairment or combination of impairments which significantly limits his physical or mental ability to perform "basic work activities."  *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a).  Basic work

---

[3] According to Plaintiff, the ALJ wrongly rejected the disability opinion of treating physician Robert J. Joseph, M.D., not only because he failed to make a proper step two determination but also because he erroneously omitted Plaintiff's upper extremity limitations from the RFC determination; improperly credited the opinion of one-time examining physician Kris Lewandowski, M.D.; credited the opinion of another one-time examining physician, E. Jacob, M.D., but then failed to incorporate in the RFC and hypothetical question posed to the VE the limitations found by Dr. Jacob; relied on Dr. Jacob's opinion as representative of Plaintiff's condition for the entire alleged period of disability even though the opinion was rendered after a successful surgical intervention in October 2007; failed to explain why he excluded from his RFC determination and hypothetical question the sit/stand, neck and upper extremity limitations that the ALJ had relied upon in the initial decision; and made an unsupported credibility determination.

activities include such physical functions as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; they also include the capacities for seeing, hearing, and speaking. 20 C.F.R. § 404.1521(b). An impairment can be considered non-severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984); *see also* Bowen v. Yuckert, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education and experience were taken into account"). Although the claimant carries the burden at step two, the burden is mild. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986) ("Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected."). A claimant need only show that his "impairment is not so slight and its effect is not so minimal." *Id.*

In his decision the ALJ cites only one reason for concluding that Plaintiff's headache disorder was not a severe impairment: that it was treated effectively with rest and over-the counter medications (Tr. 372). This justification pertains only to information apparently relayed by Plaintiff to Dr. Joseph at Plaintiff's initial visit with him in November 2001, however (Tr. 210). The court located nothing in the later-dated records of Dr. Joseph,[4] his nurse, or any other treating or examining source identified by the parties that suggests rest and over-the-counter medications effectively treated Plaintiff's headache disorder. To the contrary, Dr. Joseph's records contain numerous references to Plaintiff's continued reports of headache pain that was sometimes sharply intense and other times dull, sometimes constant and other times intermittent (*see, e.g.,* Tr. 231, 232, 236, 237, 265, 268, 307, 311, 462, 463, 470, 476, and 477), and Dr. Joseph's recommendation,

---

[4] The ALJ noted that in November 2005 Dr. Joseph concluded Plaintiff was totally disabled, an opinion the ALJ discounted (Tr. 374). In support of his determination, the ALJ stated that in some cases, such as the instant one in which he thought Dr. Joseph's opinion departed substantially from the rest of the evidence, a physician might be unduly sympathetic to a patient's situation or vulnerable to a patient's insistent demands for a disability opinion (*id.*). While the ALJ generally discredited Dr. Joseph's disability opinion for these reasons, he did not point to any specific entries regarding Plaintiff's complaints of and treatment for headache pain in Dr. Joseph's medical records which he found should be rejected or cite any specific reasons for rejecting them.

administration, and/or acknowledgment of occipital nerve block and trigger point injections to control Plaintiff's most severe pain (*see*, *e.g.,* Tr. 228, 231, 236, 237, 265, 268, 470, and 477).[5]

The Commissioner argues that Plaintiff did not complain of headache pain at all of his visits with Dr. Joseph; specifically, Plaintiff failed to mention headache pain at his June and October 2005 appointments. The Commissioner also notes, correctly, that after Plaintiff's last visit to Dr. Joseph in December 2005, Plaintiff apparently did not seek medical treatment for his headaches (or for any other symptoms) until May 2007 (*see* Tr. 523–29, Dr. Rumana's report referencing May 2007 records). Also, in September 2007, when Dr. Rumana evaluated Plaintiff for neck pain and other complaints, including headaches, Plaintiff denied having any difficulty with concentration. Further, according to the Commissioner, Plaintiff did not complain of headaches during follow-up visits to Dr. Rumana after his October 2007 cervical spine surgery. Finally, the Commissioner contends, when Plaintiff complained of headaches during his consultative examinations with Dr. Lewandowski and Dr. Jacob in March 2008 (and when he testified at the November 2008 administrative hearing), his descriptions of the intensity and duration of his headaches were not consistent.

It is possible that some, though certainly not all,[6] of the Commissioner's justifications for finding that Plaintiff's headache impairment was non-severe have some degree of merit. None,

---

[5] Dr. Joseph's records from March, April, May, and October 2002 (*see, e.g.,* Tr. 470, 472, 477, and 477); January, February, March, September, October, and November 2003 (*see, e.g.,* Tr. 228, 231, 232, 235, 236, and 237); January , April, and July 2004 (*see, e.g.,* Tr. 264–65, 268, and 270); and March, May, November, and December 2005 (*see, e.g.,* Tr. 307, 311, 462, and 463), reflect Plaintiff's reports of varying degrees of headache pain. Although Dr. Joseph's records show that the occipital nerve block and trigger point injections Plaintiff received in January and November 2003 and January 2004 provided Plaintiff with significant relief from his headache pain (*see, e.g.,* Tr. 235, 236, and 269), the relief was not permanent. Indeed, Dr. Joseph noted on several occasions during the course of his care of Plaintiff that the injections were not curative but rather palliative in nature (*see, e.g.,* Tr. 235, 239, and 472).

[6] With respect to the Commissioner's contention that Plaintiff did not complain of headaches to Dr. Joseph at his June or October 2005 visits, the court notes that Plaintiff need not have complained about headaches to Dr. Joseph at each and every visit to him in order to satisfy his "mild" step two burden. Plaintiff's numerous, repeated reports of headache pain and Dr. Joseph's consistent recommended or actual treatment of the condition with occipital nerve block and trigger point injections is sufficient to demonstrate that Plaintiff suffered from headache pain which could be expected to significantly limit his ability to perform basic work activities.

The Commissioner also submits that Plaintiff variously described the pain of his headaches as a dull ache that was present daily but worsened about once per week; a migraine headache that occurred about twice monthly; and a dull headache that persisted almost all of the time (Doc. 27 at 13, citing Tr. 344, 502, and 513). The court observes that the statements, while certainly not identical, do not appear to be significantly, much less fatally, inconsistent with each other.

however, were made by the ALJ.[7]  As noted above, the ALJ simply concluded that Plaintiff's headaches were not a severe impairment because rest and over-the-counter medication relieved them.  For the reasons discussed, this determination is unsupported by the record.  The Eleventh Circuit recently reiterated in a Social Security disability benefits appeal that "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order" and that "a court may not accept appellate counsel's post hoc rationalizations for agency actions." Baker v. Commissioner of Social Security, 384 Fed. App'x 893, 896 (11th Cir. 2010) (affirming denial of benefits because the agency's action could be upheld based on the ALJ's opinion rather than on a post hoc rationalization) (citation omitted).  In this case, as the court should not uphold the ALJ's step two determination regarding Plaintiff's headache disorder based on the reason articulated in his decision and should not accept the post hoc justifications cited by the Commissioner's appellate counsel in his brief, this matter should be remanded for further agency consideration.

Because on remand the ALJ must determine anew—commencing at step two—whether Plaintiff is disabled, the court need not address Plaintiff's remaining claims of error (*see* n.3, *supra*), which implicate subsequent steps of the sequential analysis that also involve the step two determination.  The ALJ should be aware, however, of Plaintiff's remaining contentions in the event it is again concluded that Plaintiff is not disabled because he can return to his past work or perform the work identified by the VE.  The undersigned takes no position on the remaining issues identified above but recommends that upon remand these issues be brought to the attention of the ALJ so that, to the extent they are relevant, they may be addressed at that level of review.

V.      CONCLUSION

For the foregoing reasons, the undersigned concludes that the Commissioner's decision is not supported by substantial evidence and should not be affirmed.  *See* 42 U.S.C. § 405(g); Foote, 67 F.3d at 1556 (remanding for additional administrative proceedings).

Accordingly, it is respectfully **RECOMMENDED**, pursuant to sentence four of 42 U.S.C. § 405(g), that the decision of the Commissioner be **REVERSED**, that the Commissioner be ordered

---

[7]  Significantly, the Commissioner's justifications also, for the most part, do not address Dr. Joseph's medical records and treatment of Plaintiff, which spanned the four-year period between November 2001 through December 2005.

to remand this case to the ALJ for further proceedings consistent with this report and recommendation, and that the clerk be directed to close the file

At Pensacola, Florida this 2<u>nd </u>day of February 2011.


<u>/s/ *Elizabeth M. Timothy*</u>
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**